## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **AUGUSTINE EKWEM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 09-1291 (ESH)** |
| | ) | |
| **ADRIAN FENTY, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

### MEMORANDUM OPINION

Plaintiff Augustine Ekwem, an employee of the District of Columbia Child and Family Services Agency (the "Agency"), has sued Mayor Adrian Fenty (the "Mayor") in his individual capacity and the District of Columbia (the "District"), alleging violations of his constitutional and federal statutory rights, and his rights under a consent decree governing the Agency. Plaintiff also sues for negligence and defamation, and for violations of the D.C. Whistleblower Act, D.C. Code §§ 1-615.51 to -615.58, and the D.C. Comprehensive Merit Personnel Act ("CMPA"), D.C. Code §§ 1-616.51 to -616.54. Defendants have moved to dismiss for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Court will dismiss plaintiff's federal claims and will decline to exercise supplemental jurisdiction over his state law claims.

### BACKGROUND

Plaintiff has worked for the Child Protective Services division of the Agency for fifteen years. (Second Am. Compl. ["Am. Compl."] ¶ 18.) He has supervised caseworkers responsible for investigating reports of child abuse and neglect for the past five years. (*Id.*)

In January 2008, U.S. Marshals carrying out an eviction found the bodies of four young girls. (Am. Compl. ¶ 23.) The girls were alleged to have been murdered by their mother, Banita Jacks. (*Id.*) The Agency had received reports of child abuse and neglect involving the Jacks family, but no caseworker had ever met the family or made further contact. (*Id.* ¶ 24.) In reaction to public outcry and "intense scrutiny" stemming from the murders, the Mayor terminated six Agency employees, including a supervisor, who had been involved with the Jacks case. (*Id.* ¶¶ 25-27.) Management assigned the caseworkers who had reported to the terminated supervisor, but were unconnected to the Jacks case, to new supervisors. (*See id.* ¶¶ 29-30.) Plaintiff was assigned two new caseworkers as part of the re-organization. (*Id.* ¶¶ 29-30, 42.)

Pursuant to a consent decree filed in *LaShawn v. Fenty*, No. 89-1754 (D.D.C. Feb. 27, 2007), the District manages the Agency under an implementation plan that must be filed in federal district court. (*Id.* ¶¶ 19-20.) Although the plan limits caseworkers to twelve concurrent cases (*id.* ¶ 35), those under plaintiff's supervision were assigned far more. (*See id.* ¶¶ 34, 38, 41.) Plaintiff complained to management about the excessive workloads, but nothing was done. (*Id.* ¶¶ 51, 54, 56-60.) By June 2008, plaintiff's eight caseworkers had been assigned a total of 261 cases. (*Id.* ¶ 65.) No other supervisor managed as many caseworkers.[1] (*Id.* ¶ 67.)

On June 25, 2008, a six-month old boy whose case had been assigned to one of plaintiff's caseworkers was found dead. (*Id.* ¶ 68.) The caseworker, who was managing fifty-seven investigations at the time of the boy's death, had never made contact with the boy's family even though she had been assigned the case nearly three months earlier. (*Id.* ¶¶ 70-71.) On July 8, the caseworker was terminated, and plaintiff was placed on paid administrative leave. (*Id.* ¶¶ 75, 77.) On the same day, the *Washington Post* reported on both the firing and the paid leave,

---

[1] Plaintiff has not alleged that he managed more *cases* than other supervisors, and he has not provided comparable figures for other supervisors at the Agency.

although it did not mention plaintiff by name. (*Id.* ¶ 76.) In August 2008, another child whose case had been assigned to one of plaintiff's caseworkers was found dead; the caseworker subsequently resigned. (*Id.* ¶ 78.)

On September 9, 2008, plaintiff was suspended from his position without pay for ten days. Plaintiff was not given a hearing either before or after he was suspended. (*Id.* ¶ 87.) He could not appeal the decision because he is a member of the Management Supervisory Service. (*Id.* ¶ 88.) On July 13, 2009, plaintiff filed this action, naming Adrian Fenty and the Agency. (Compl. at 1 & ¶¶ 84-85.) He alleges that defendants' "acts, polic[i]es, practices and procedures" violated his rights under the Freedom of Speech Clause of the First Amendment, the Fifth Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, 42 U.S.C. §§ 1983 and 1985(3), the *LaShawn* implementation plan, the common law and the D.C. Code. Plaintiff asks the Court to expunge his suspension and other disciplinary action from his record, to compensate him for lost pay and benefits from his ten-day suspension, to award him one million dollars in compensatory and punitive damages stemming from his ten-day suspension, damage to his reputation and employment prospects, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and "other non-pecuniary losses" from "being [publicly] blamed for the death of a child," and to award him attorney's fees and costs. (*Id.* at 12-13 (prayer for relief).) Defendant now moves under Fed. R. Civ. P. 12(b)(6) for dismissal for failure to state a claim upon which relief can be granted.

## ANALYSIS

## I.  STANDARD OF REVIEW

### A.  Rule 12(b)(6) Motion to Dismiss

"In determining whether a complaint fails to state a claim, [courts] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] . . .  matters of which [courts] may take judicial notice," *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), and documents "appended to [a motion to dismiss] and whose authenticity is not disputed" if they are "referred to in the complaint and . . . integral" to a plaintiff's claim.  *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

When ruling on a Rule 12(b)(6) motion to dismiss, courts may employ a "two-pronged approach."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Courts must first assume the veracity of all "well-pleaded factual allegations" in the complaint.  *Id.*  Courts need not accept as true "'naked assertion[s]' devoid of 'further factual enhancement,'" *id.* at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)), or "legal conclusions cast in the form of factual allegations."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A pleading must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' . . . ."  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Once the court has determined that there are well-pleaded factual allegations, it must determine whether the allegations "plausibly give rise to an entitlement to relief" by presenting "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" in that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570).  Merely pleading facts

"consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* at 1949.

### B.  Constitutional Claims Under 42 U.S.C. § 1983

Plaintiff concedes that he is not seeking declaratory or injunctive relief.  (Pl.'s Opp'n at 9.)  Therefore, since he only seeks damages, he must bring his claims under 42 U.S.C. § 1983, which "authorizes equitable relief and compensatory damages against any 'person' who, under color of law, deprives another of a constitutional right."[2]  *People for the Ethical Treatment of Animals v. Gittens*, 396 F.3d 416, 424-25 (D.C. Cir. 2005).  Under § 1983, plaintiff may bring suit against the Mayor in his individual capacity only if he alleges that the Mayor was directly responsible for the constitutional deprivation or that he gave "'authorization or approval of such misconduct.'"  *Int'l Action Center v. United States*, 365 F.3d 20, 27 (D.C. Cir. 2004) (quoting *Rizzo v. Goode*, 423 U.S. 362, 371, 376 (1976)).  Further, "[t]o impose liability on the District under . . . § 1983, plaintiff must show 'not only a violation of his rights under the Constitution or federal law, but also that the District's custom or policy caused the violation.'"  *Feirson v. District of Columbia*, 506 F.3d 1063, 1066 (D.C. Cir. 2007) (quoting *Warren v. District of Columbia*, 353 F.3d at 38).  "At the pleading stage, only an allegation of the existence of a policy, practice, or custom and its causal link to the constitutional deprivation suffered is required."  *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 64 (D.D.C. 2007).  However, if plaintiff's "constitutional rights were not violated . . . his § 1983 claims against the . . . [d]efendants must fail."  *Feirson*, 506 F.3d at 1068.

---

[2] D.C. may be considered a "person" liable under § 1983 "only if [its] agents acted pursuant to municipal policy or custom."  *Gittens*, 396 F.3d at 425 (quoting *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004)).  "The action of an official with final decision-making authority in a particular area can amount to a municipal 'policy.'"  *Id.*

## II.  PLAINTIFF'S CLAIMS AGAINST THE MAYOR

Plaintiff's claims against the Mayor in his individual capacity must be dismissed, for plaintiff does not allege that the Mayor had "personal knowledge about the claims" or that he "condoned any conduct" that allegedly led to plaintiff's suspension.  (Defs.' Mot. at 7.)  Where a complaint against an official in his individual capacity does not "establish the [official]'s personal involvement in the alleged wrongdoing," judgment as a matter of law is appropriate.  *See Swinson v. Metro Police Dep't*, No. 08-0809, 2009 WL 1327225, at \*2 (D.D.C. May 12, 2009) (dismissing claims made against the Mayor in his personal capacity).  The complaint alleges that the Mayor terminated Agency employees as a result of the Jacks scandal, but it does not allege that he directed, participated in, or approved of plaintiff's suspension.[3]  (Am. Compl. ¶ 26.)  Based on the facts alleged, the Court cannot reasonably infer that the Mayor "participated in any decision or approved any policy that related to the case."  *Cameron v. Thornburgh*, 923 F.2d 253, 257-58 (D.C. Cir. 1993) (dismissing claims against officials in their individual capacities where the complaint lacked "allegations specifying [their] involvement").  These claims will therefore be dismissed.

---

[3] The complaint cites a newspaper article which suggests that the Mayor and the Attorney General for the District agreed that the death on June 25, 2008, was "unacceptable and someone should be held accountable."  Nikita Stewart, *Caseworker to be Fired After Baby Dies*, Wash. Post, July 8, 2008.  Plaintiff was placed on paid administrative leave on the day the article was published.  Plaintiff does not, however, make any allegations based on this newspaper article, and he does not explain how it plausibly supports the Mayor's involvement with his suspension in September 2008.  Furthermore, even if he had sufficiently alleged the Mayor's involvement, plaintiff would be unable to bring a claim against him under § 1983 because he cannot state a claim for any violation of his constitutional rights.  *See infra* Part III.

## III. PLAINTIFF'S CONSTITUTIONAL CLAIMS

### A. Fifth Amendment

#### 1. Liberty Interest

Plaintiff first argues that his "reputation and future employment opportunities were severely harmed by government created danger" and, therefore, under *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989), defendants have violated § 1983 by depriving him of his liberty interest under the Due Process Clause of the Fifth Amendment. (Pl.'s Opp'n at 6.) *DeShaney* held that the government has a duty to protect a person's "safety and general well-being" when it "takes [him] into its custody and holds him there against his will." *Id.* at 199-200; *Smith v. District of Columbia*, 413 F.3d 86, 93 (D.C. Cir. 2005). As plaintiff does not allege that he has been taken into custody, he cannot state a claim under *DeShaney*. *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 406 (D.C. Cir. 2006) ("In the public employment context, we have consistently rejected imposing a heightened employer-to-employee obligation because of the absence of a state-imposed restraint on liberty.") *DeShaney* has also been interpreted to create a "substantive due process right to protection" where "District of Columbia officials affirmatively act to increase or create the danger that ultimately results" in an individual being harmed by "third-party violence." *Butera v. District of Columbia*, 235 F.3d 637, 651-52 (D.C. Cir. 2001). As plaintiff does not allege any "third-party violence," he cannot state a claim under this interpretation of *DeShaney*.

Plaintiff also suggests that harm to his "future employment opportunities" and his "reputation" constitutes a violation of his due process rights. (Am. Compl. ¶ 89; Pl.'s Opp'n at 6.) But it is well-established that "persons whose future employment prospects have been impaired by government defamation 'lack . . . any constitutional protection for the interest in

reputation.'"  *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003) (citing

*Paul v. Davis*, 424 U.S. 693, 706 (1976)).  Further, plaintiff has not alleged that any District

"custom or policy" caused the injury to his reputation.  Plaintiff therefore cannot state a due

process claim under § 1983 based on alleged harm to his reputation[4] or a deprivation of any

liberty interest.

### 2. Property Interest

Plaintiff claims that the District deprived him of his property interest in his continuing

employment when it failed to provide him a hearing after his suspension.  (Pl.'s Opp'n at 7.)

"Because property interests are created and defined by state law, the existence of a property

interest depends on plaintiff's claim of entitlement under District of Columbia law."  *Evans v.*

*District of Columbia*, 391 F. Supp. 2d 160, 165 (D.D.C. 2005) (citing *Cleveland Bd. of Educ. v.*

*Loudermill*, 470 U.S. 532, 538 (1985)).  Plaintiff argues that D.C. Code § 1-616.51(5) requires

the Agency to grant him a hearing within a reasonable time after his suspension, and as a result,

he claims that defendant deprived him of his Fifth Amendment right to a hearing.  (Pl.'s Opp'n at

7.)  Plaintiff is incorrect as a matter of law, since government employees "who are terminable at

will have no property interest because there is no objective basis for believing that they will

continue to be employed indefinitely."  *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988).

Plaintiff is a member of the Management Supervisory Service, and thus, under D.C. law, he

holds an "at-will appointment."  D.C. Code § 1-609.54(1).  He therefore has no property interest

in his continued employment.  Furthermore, Management Supervisory Service members are

specifically excluded from the Career Service, D.C. Code § 1-608.01(a), and thus are not

---

[4] Although there is an exception for "reputation plus" cases, in which the harm approaches
"formal exclusion from a chosen trade or profession," *Trifax Corp.*, 314 F.3d at 644, plaintiff
does not claim to have suffered this kind of damage to his reputation.

protected by the CMPA.  *Cf. Fonville v. District of Columbia*, 448 F. Supp. 2d 21, 26-27 (D.D.C.

2006) (the CMPA creates a property interest for members of the Career Service).  Thus, § 1-

616.51, which protects Career Service employees, *see Fonville*, 448 F. Supp. 2d at 26-27, does

not apply to plaintiff.  As a result, under D.C. law plaintiff has no basis to argue for a hearing

since he cannot state a claim for violation of a protected property interest under the Due Process

Clause.

### 3.  Equal Protection

Plaintiff claims that he was discriminated against in violation of his right to equal

protection as guaranteed by the Fifth Amendment, *see Bolling v. Sharpe*, 347 U.S. 497 (1954),

because of his age (fifty-two) and his country of birth (Nigeria).  (Pl.'s Opp'n at 7.)  He alleges

that caseworkers and cases were assigned in an "arbitrary, capricious, and discriminatory

manner" and suggests that "[o]lder supervisors and caseworkers, particularly those of a different

national origin, were treated harshly . . . assigned an inordinate number of cases and . . .

threatened with disciplinary action."  (Am. Compl. ¶ 62.)

To plead intentional discrimination in violation of equal protection principles, a plaintiff

can point to an adverse government action or policy that employs express racial criteria.  *See,

e.g.*, *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995) (holding that strict scrutiny

applied to government's use of race-based presumptions in identifying preferred subcontractors

for government projects).  Where the government's action or policy is facially neutral, a plaintiff

"must plead and prove that the defendant acted with discriminatory purpose."  *Iqbal*, 129 S. Ct.

at 1948.   This can be done through "circumstantial or direct evidence of intent as may be

available."  *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

Plaintiff has failed to allege facts that "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1949-50.  Since plaintiff has not suggested that defendants employed express criteria in assigning cases, "'proof of discriminatory intent or purpose is required to show'" an equal protection violation.  *Simms v. Dist. of Columbia Gov't*, 587 F. Supp. 2d 269, 276 (D.D.C. 2008) (quoting *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003)) (internal edits omitted).  "[P]urposeful discrimination requires more than 'intent as volition or intent as awareness of consequences.'  It instead involves a decisionmaker's undertaking a course of action '"because of," not merely "in spite of," [the action's] adverse effects upon an identifiable group.'"  *Iqbal*, 129 S. Ct. at 1948 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).  Plaintiff presents no evidence of the caseloads, national origins, or ages of other supervisors or caseworkers to support his claim.  His only factual support is the conclusory allegation that "[o]lder supervisors and caseworkers, particularly those of a different national origin," were "general[ly]" assigned "inordinate" numbers of cases and threatened with disciplinary action, that most of the other supervisors were in charge of five or fewer caseworkers, and that he supervised "more caseworkers" (eight) than any other.  (Am. Compl. ¶¶ 62, 65, 67.)  While potentially "consistent with" defendants' liability, this evidence "'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  The Court cannot reasonably infer, based on these allegations, that defendants were "motivated by discriminatory intent or purpose."  *See Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) (affirming dismissal of equal protection claims where plaintiff's "spare facts and allegations" did "'not permit the court to infer more than the mere possibility of misconduct.'"  (quoting *Iqbal*, 127 S. Ct. at 1950)).  Plaintiff has therefore failed to allege any facts plausibly indicating

"discriminatory intent or purpose," and has not established the required elements of an equal protection claim.  *See McManus v. Brooks*, No. 00-7030, 2000 WL 1093069, at *1 (D.C. Cir. June 29, 2000) (affirming dismissal for failure to state a claim under the Equal Protection Clause where plaintiff failed to allege facts indicating that "actions were undertaken on a discriminatory basis or were motivated by discriminatory intent or purpose"); s*ee also Village of Arlington Heights*, 429 U.S. at 265 ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

Moreover, even if plaintiff had alleged an equal protection violation, he would be unable to hold the District liable under § 1983.  "Proof of a single incident of unconstitutional activity is insufficient to impose liability [under § 1983] unless there was proof that there was a policy in place that was unconstitutional."  *Sanders v. District of Columbia*, 522 F. Supp. 2d 83, 88 (D.D.C. 2007) (citing *Monell v. Dep't of Soc. Servs. of New York*, 438 U.S. 658, 694 (1978)). Although plaintiff alleges that he supervised more caseworkers than any other supervisor, he "alleges *no* facts to support [his] claim that the District has a racially discriminatory policy or practice" other than a "single conclusory statement" that older supervisors and caseworkers of a different national origin were given an inordinate number of cases and threatened with discipline. *Plater v. Dist. of Columbia Dep't of Transp.*, 530 F. Supp. 2d 101, 108 (D.D.C. 2008).  As a result, his "actual allegations are insufficient to raise [his] Fifth Amendment claim 'above the speculative level,'" and his claim must be dismissed.  *Plater*, 530 F. Supp. 2d at 108 (quoting *Twombly*, 550 U.S. at 555).

### B.  First Amendment

Plaintiff alleges that his First Amendment rights were violated when the District retaliated against him for complaining to management.  (*See* Am. Compl. ¶¶ 83-86.)  The "threshold question" for plaintiff's "First Amendment claim is 'whether [he] spoke as a citizen on a matter of public concern.'"  *Winder v. Erste*, 566 F.3d 209, 214 (D.C. Cir. 2009) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).  If he spoke as a citizen, his speech is protected unless the government "can justify treating its employees differently from other citizens."  *Id.*  If plaintiff spoke "'pursuant to' his official duties, he cannot claim constitutional protection."  *Id.* (quoting *Garcetti*, 547 U.S. at 421.)  Plaintiff states that his responsibilities as an employee are to "supervise[] caseworkers who investigate reports of child abuse and neglect" (Am. Compl. ¶ 18), to receive cases from program managers and to "distribute these cases to caseworkers."  (*Id.* ¶ 37.)  He also states that when he was suspended, management charged him with "failing to supervise the completion of 17 visits" by one of his caseworkers, implying that this was also one of his responsibilities.  (*Id.* ¶ 82.)  The speech at issue is plaintiff's complaint to "management" that the caseworkers he supervised had been assigned too many cases, and that one of his caseworkers was suffering from "burn out."  (*Id.* ¶¶ 51, 54.)

Based on plaintiff's own description of his job responsibilities, it is clear that his speech concerned his official duties.  "Whether employees spoke pursuant to their official duties, and thus receive no First Amendment protection, is a 'practical' inquiry – focusing not on formal job descriptions, but on the employees' actual responsibilities."  *Thompson v. District of Columbia*, 530 F.3d 914, 916 (D.C. Cir. 2008).  This Circuit has "consistently held that a public employee speaks without First Amendment protection when he reports conduct that interferes with his job responsibilities."  *Winder*, 566 F.3d at 215.  Plaintiff suggested to management that the

caseworkers he supervised had been overburdened with cases.  Plaintiff's job requires him to distribute and manage cases and to supervise caseworkers who make contact with families.  Even if plaintiff was not required to "decide[e] whether or not a caseworker should be assigned new cases" (Pl.'s Opp'n at 6), he was responsible for managing caseworkers and ensuring that they performed their duties.  The overburdening of plaintiff's caseworkers clearly "interfere[d] with his job responsibilities."  *Winder*, 566 F.3d at 215 (citing *Thompson*, 530 F.3d at 917-18).  His statements to management were therefore made pursuant to his official duties, not as a citizen, and as such, he cannot state a claim under the First Amendment.

### C.  Fourteenth Amendment

Defendants argue that plaintiff's claims against them under the Fourteenth Amendment must be dismissed because the Fourteenth Amendment does not apply to either the District or its employees and officials.  *Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1953).  Plaintiff concedes that the Fourteenth Amendment does not apply.  (Pl.'s Opp'n at 4.)  The Court will therefore grant defendants' motion to dismiss this claim.

## IV.  PLAINTIFF'S § 1985 CLAIM

Plaintiff also alleges defendants violated 42 U.S.C. § 1985(3), which, in relevant part, creates an action for damages where two or more persons conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  Plaintiff fails to state a claim for relief under § 1985 because he fails to support his claim with "well-pleaded factual allegations."  *Iqbal*, 129 S. Ct. at 1950.  "Among other things, section 1985 plaintiffs must allege the elements of civil conspiracy, including: 'an agreement to take part in an unlawful action or a lawful action in an unlawful manner.'"  *Barr v. Clinton*, 370 F.3d 1196, 1200 (D.C. Cir. 2004) (quoting *Hall v.*

*Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002).  Plaintiff fails to allege any facts that would allow the

Court to infer there was an agreement or a conspiracy among defendants.  The facts as pled in

plaintiff's complaint "clearly do not raise an inference that [defendants] were conspiratorially

motivated . . . ."  *Atherton*, 567 F.3d at 688.[5]  Therefore, his claims under § 1985 must be

dismissed.

## V.  PLAINTIFF'S CLAIM UNDER *LASHAWN V. FENTY*

Plaintiff asks the Court to "secure protection of and to redress deprivation of rights

secured by" *LaShawn*.  (Am. Compl. ¶ 8.)  Plaintiff suggests that he has protected rights under

*LaShawn* because the District's plan for managing the Agency states that the Agency will

"continue 'overstaffing' . . . to maintain low investigator caseloads (not to exceed 1:12)."  (*Id.*)

As plaintiff was not a party to the consent decree in *LaShawn*, he "must demonstrate" that he is

one of the "intended beneficiaries in order to have enforcement rights."  *S.E.C. v. Prudential*

*Sec., Inc.*, 136 F.3d 153, 159 (D.C. Cir. 1998).  To do so, he must both show that the parties to

the decree "intended to confer a benefit directly on [him]" and that "the parties intended [him] to

be able to sue to protect that benefit."  *Id.*  At best, plaintiff's complaint suggests that he

benefited indirectly from a low ratio of caseworkers to open cases.  Second, there is no basis to

claim that the parties to the consent decree intended Agency staffers to sue to enforce its

provisions.  Therefore, plaintiff cannot rely on *LaShawn*.

## VI.  PLAINTIFF'S CLAIMS UNDER D.C. LAW

When the federal-law claims providing the Court with original jurisdiction have been

dismissed, the Court "may decline to exercise supplemental jurisdiction" over the remaining

---

[5] Even if plaintiff had alleged the existence of a conspiracy, his failure to plausibly allege the existence of a "class-based, invidiously discriminatory animus" behind the conspiracy would be fatal to his claim under § 1985(3).  *See Atherton*, 567 F.3d at 688.

state-law claims.  28 U.S.C. § 1367(c)(3).  In deciding "whether to exercise jurisdiction," the

Court "should consider and weigh . . . the values of judicial economy, convenience, fairness, and

comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  "[I]n the usual case in

which all federal-law claims are eliminated before trial, the balance of factors . . . will point

toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7.

In light of the dismissal of plaintiff's federal claims, there is no reason for the Court to

retain jurisdiction over the remaining common law and D.C. statutory claims.  (Am. Compl. ¶¶

9-13.)  The Court will therefore dismiss them without prejudice pursuant to 28 U.S.C. §

1367(c)(3).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted.  The Court dismisses

plaintiff's federal claims because he has failed to state a claim for which relief can be granted.

The Court declines to exercise supplemental jurisdiction and dismisses plaintiff's state law

claims without prejudice.  An Order consistent with this Memorandum Opinion is being issued

this date.


_____/s/_____

ELLEN SEGAL HUVELLE
United States District Judge


Date:   October 29, 2009